Mr. Bristler, is it Brister? Close enough. How is it? Brister. Brister. Please proceed. If the court pleases, I'll spend most of the time on the inequitable conduct and obvious misfindings made by the district judge in North Dakota that invalidated this patent. On the inequitable conduct, of course, there's two prongs, materiality and specific intent to deceive. We know neither could have been the case here. On materiality, the question is, would the patent office have affirmed the patents, issued the patents, if it had known about 61 prior fracked jobs where the inventor was testing this invention for the intended purpose? And we know the answer to that because two continuation patents were issued, approved by the patent office after full disclosure, not just of all 61 fracked jobs, but of the district court's finding of inequitable conduct and depositions and everything else. Can I just, a point of clarification, just to confirm, it was my understanding that the PTO's decision in those subsequent applications came after the district court reached its conclusion on inequitable conduct. Is that correct? Right. Yes. And we disclosed the findings on inequitable conduct to the PTO and they found no. Or they issued the patents. So the question, would the PTO have issued the patent had they known? Yes, they in fact did. On intent to deceive, we also know there was no specific intent to deceive because the I decided the prior jobs were experimental. Wasn't his testimony excluded? From the tortious interference trial, yes. It was not excluded from the inequitable conduct trial? Well, it was implicitly. We designated him, asked to call him. He was there. He was at the evidentiary hearing. He was at the jury trial in September of 2014. He was at the evidentiary hearing on inequitable conduct four months later in January of 2015. The trial judge had ordered us to submit his materials by affidavit, which we did. And that's, as an offer of proof, that's 23-112 of the record, which we did. And so there's no reason. The issue is, should that have been excluded? Well, whether it should have been excluded for the jury is one thing. But this is months later, and why would you exclude it then? Under the Eighth Circuit, I think the law of the local circuit would apply. You've got to have, to exclude in that case, you've got to have a reason. Well, immediately for the jury trial is one thing because you have to delay the jury trial. But months later, they had plenty of opportunity to discover this. It's no surprise. And it's decisive. The patent attorney says, I told him, he explained it to me, I told him you didn't need to file it. So could the inventor have a specific intent to say that? Do I understand correctly what the district court had said? The reason why he couldn't testify, at least in the first trial, was because during a deposition, his testimony had been, you know, objected to. His testimony on this very point had been objected to on the basis of an attorney-client privilege, right? Right. And all of those objections were made before there was any pleading for inequitable conduct. So the question is do you have to – But you had noticed that they were going to file an amendment of inequitable conduct. Not at the time of the depositions. The trial judge based it on a general pleading that we're raising all affirmative defenses under the patent laws that may exist in the future. He said, well, if that puts you on notice, that puts you on notice on every defense. I thought that they had actually notified you that they were going to file an amendment. There was emails back and forth, and I don't know exactly the timing, but they were at or about the time, and I think most of them were after the first deposition in 2013. Maybe your friend can help clarify the record afterwards, but I thought there was at least one communication prior to the attorney's deposition that inequitable conduct was going to be added to the case. I'd have to look back and see. Well, if that's the case, let's just assume I'm right. If that's the case and you knew that inequitable conduct was going to be added as an issue and you claim privilege for the attorney during that deposition, isn't that a sound basis for excluding his testimony? For the jury trial, yes. Why not for everything? Well, because the Eighth Circuit standards – Because what happened was, when the issue was finally pleaded, they designated an expert who was willing to testify that he could infer intent from this, that, and the other. So we designated an expert who said you could infer advice of counsel from this, that, and the other. Our expert was struck the month before trial. So that's why we tried, when we first designated Mr. Narbus to come testify, because the expert who was going to address that issue was struck at the last minute. Well, that sounds like litigation choices on your part that you have to be held to. Per se, it wasn't me. Please don't interrupt me. I don't see how it was an abuse of discretion for the district court to exclude his testimony when you prohibited him from testifying in his deposition and prohibited them from asking him about that. Well, the question would be, when the inequitable conduct is made months after trial, is there any reason to continue excluding him? Well, yes, because they didn't have the opportunity to depose him on that issue because you asserted privilege. They had for four months after the trial. It's not their obligation to re-notice a second deposition. You made that tactical choice to exclude his testimony. Let's just move on. I don't want to belabor this point. I think you have other things to say. On the obviousness question, the district court granted summary judgment that the patent was obvious based on prior art. In two subsequent re-examinations, the PTO examiner reviewed exactly the same prior art, and that was not obvious. I understand your position is that there's genuine issues of material fact. Is it your position that because the PTO on the same prior art came up with a different conclusion, that the PTO must have had some underlying fact findings that at a minimum would raise a genuine issue of material fact? No, we're not arguing that any PTO fact findings are binding. That's not what I'm saying. I said at a minimum raise a genuine issue of material fact. Right, because when the issue is there evidence both ways on obviousness, then it's for the jury. The examiner says, I'm looking at the prior art and it's not obvious to me. Can we say it's a matter of law? The examiner either wasn't a reasonable person or... I think there are cases that say if the examiner was not looking at everything the district judge was looking at, you can have a difference. But this is not that case. The only basis for the obviousness was prior art. Their counsel for the other side submitted a 35-page argument, institute request for re-examination, that listed all the prior art, made all these recommendations. The PTO examiner said, heating water for fracking is just different from heating water for your shower or your swimming pool. It's 4,000 gallons a minute. It's not just heating water as it comes out of a fire hydrant, but water that's coming at a rate that's multiple times your average fire hydrant. That's a different kind of problem. Let's see. I think I've covered... Let me make clear, the exclusion of the NIRBUS declaration goes to the intent to deceive issue. It doesn't change the materiality problem. The materiality problem is would the PTO have done differently if they knew about all 61 prior jobs? There's no question they did. Those were in almost excruciating detail in Mr. Hefley's declaration that was submitted on both of the conditional patents. The problems on obviousness. The reason we think the district court got off base and came to a different conclusion than it was obvious, he defined a person of ordinary skill in the art as somebody who doesn't need to know much about fracking operations, just has to be familiar with heating water, and that the field of endeavor is heating water. We think that's just not true for several reasons. One is the volumes I've already mentioned, the flow rates, the remoteness. This is done in the middle of nowhere in Oklahoma or North Dakota. Sometimes the heating water has to be brought in from several miles away. And the main difference is the danger if the system doesn't work or if it fails. If your tankless water heater at home doesn't work, you have a cold shower. If it doesn't work on a fracking job, the casing can split, the well can sand up, you can lose the entire well, and you have danger of environmental, not to mention financial disasters. I just want to confirm on your trademark claim that you raised in your opening brief. You have decided to abandon that issue, correct? Right. I've never had a 37-year career. I've never had an appeal with this many points. I'm a little bit embarrassed, so that's why I dropped that one, yes. Would you like to save the rest of your time for rebuttal? Yes. I forgot to look. Did I have 15 minutes to start? Yes. Thank you, Your Honor. Okay. Mr. Boundy. Now, just before you begin, we have 15 minutes on the clock. If you use all the time, he doesn't get to speak. I'm not worrying about his time. That's your job. Okay. May it please the Court, my name is Ross Boundy, and we represent the Cross Appellants. Let me dive right into the question here of the Patent Office Proceedings. The Patent Office Proceedings took place eight months after the trial. And in the first instance, the Patent Office Proceedings we're talking about with respect to the continuation patents are different patents. They're different scope. They're different claims at issue. And what's interesting about that is that what you essentially have is an effort to do a do-over in the Patent Office of what didn't work at trial. Let me tell you why I believe that's the case. There are two sterling examples of this. First of all is the Hefley 64-page declaration that's submitted in the Patent and Trademark Office. Can I interrupt you for a minute? You say the claims at issue in those later applications are different. Yes. How are they materially different for purposes of the issue before us today? Well, I can't answer the question. Let me tell you why. There are 99 claims in the 993 patent in suit. There are, I believe, 48 claims in each of the other two. There's nothing in the record comparing the scope of those two, and I don't think oral argument at this time is the place to do that kind of claim analysis. They haven't done it. They've simply said they're all-encompassing, they're broader, so therefore the conclusion must be that the examiner had that in mind as well. But my point is simply that they're different patents. It doesn't really help if you can't answer my question, to be honest with you. It doesn't help as much as you could answer my question. My answer would be that I don't agree that they're the same, that it's necessarily broader. It could be narrow. He's argued that they're broader. I'm going to say I don't know, and it would require an exhaustive analysis that nobody has done to determine whether or not they are the same. The 64-page declaration, 400 pages of testimony at trial, and that is not submitted to the PTO. Instead, there's a newly minted 64-page declaration, which is significantly at odds at what was testified at a trial. At trial, for example, Mr. Hipley said, well, I don't have any notes, and I don't have any clear recollection of any one of these particular jobs that I could testify in any detail as to what was done. Suddenly in his 64-page declaration, he submits a chart showing 51 of these sales with information about each one that he somehow magically reconstructed now after the fact, eight months after trial. The second example is the Nearbos and Brignac depositions. Sorry, offers of proof. They submit these declarations to the PTO, and that allows them to argue, they think, that we relied upon advice of counsel. What's interesting about that, though, as the court has pointed out, those were excluded from trial, and there's not one mention of the fact in the PTO proceedings that, well, we couldn't get that in because we had asserted the attorney-client privilege to prevent all discovery on it. And I think it's fanciful at best to suggest that after the trial concluded, in the four-month period of time, counsel phrases it as an evidentiary hearing. It wasn't an evidentiary hearing. It was an argument on whether or not the case was exceptional or not, and there was no operative. Nobody suggested. I didn't hear them say, would you like to take a deposition of somebody? I would have pointed out discovery closed eight months ago. We tried the case on a set of facts that are different than the set of facts that they submitted to the PTO. This court, not the PTO, is the body that reviews trial court findings, and there's a good reason for that. The MPEP 2010 cautions that inequal conduct is a statutory criteria. It is not a statutory criteria for patentability, but it's rather a judicial application of the unclean hands doctrine. And that's appropriate to be handled by the courts, says the MPEP, rather than by the administrative body. So unless this court were to decide that the trial court was clearly in error, clearly erred in its finding that the prior sales were commercial, that train has left the station. And the conclusion cannot be disturbed, regardless of whether a PTO examiner thought otherwise. With respect to intent, let me just note two things. Can I switch course, assuming you're the right person? Are you the right person to ask about torches, interference? I am. Okay, so I'm a little troubled and confused by this issue. So the objectionable testimony, or at least the testimony your friend on the other side objects to, is I think indisputably hearsay, could have been admitted for impeachment purposes, but can't be relied on to support the jury on the merits. Is that correct? Let me assume that you're correct. If you are correct... I'm assuming I'm correct. You don't have to assume it. I'm happy to make that assumption. Tell me what other evidence then supports the jury verdict on it, because I looked at what I thought you cited, and it seems pretty thin to me. All right. Let me just tell you that there were two witnesses to this telephone conversation. We called the first one Powell as a part of our case-in-chief. They objected on the basis of hearsay. A week later, they seem now to have forgotten, although the citation is in their brief, a week later they called the other witness as a part of their case-in-chief, and they asked the witness this question. This is Lind is the second guy that they called. The question was, question, during the call we're talking about, isn't it true that Mr. Kelly told Mr. Powell that Triangle could not award the work to plaintiffs because Ron Liza told Kelly that he had a patent and he didn't apply? Answer, yes. It goes on, and there's a couple more questions to that effect. Where is that in the record? That is in Appendix 22750. Which volume? I'll get that in just a second. Sorry, you have five volumes. I'm not going to sort through those. It's five of four. It's five? Five of four. Of four. That continues, Appendix 22750 all the way up to 22757, which includes my cross-examination where, again, he says, without objection, he says he basically just said that he couldn't put Triangle in jeopardy and that Super Heaters was going to have the work. So any objection as to that hearsay is waived when they called another witness. That's a witness that's affiliated. Also with my client, with Energy. Both witnesses were affiliated with Energy. Both of them testified that they'd heard the conversation with Bill Kelly. Why isn't that hearsay, too, then? Well, it's not hearsay because, first of all, nobody objected to it on the basis of hearsay, and secondly, I certainly didn't object to it. This is not the testimony I was looking at. The other testimony, is there other testimony, that direct testimony from somebody on their side that would show they tried to? Yes, indeed there is. I can't give you a page site right now, but there was a fellow by the name of Jim Cole, who was Mr. Hefley's partner in the appellant organizations. Page 27716. Thank you. And he testifies that he had heard from Mr. Lyles that there had been a dust-up, I think he called it, a dust-up with Triangle. He names them by Triangle. Discussion. Why don't you take a look at the page so you don't mislead us. 27716. Sure. This is the one that I looked at specifically. It seems to me your best support. And it really, to me, is a question whether it rises to the level of evidence to show the elements of the claim here. This is, I think, corroborative evidence for what our people say they heard. And this is from Mr. Cole, who says that he heard that there was this discussion. Wait a minute. Let me start with what you just said. I don't view the other testimony you're citing as admissible for this point at all. So it can't be that this corroborates that. You have to rely on something else independently, in my view, apart from the hearsay testimony. I know you disagree with that, but let's just assume that's a starting point. Why is this testimony sufficient to support the jury verdict? Well, let me just say one thing to make sure that you understand my position. I'm sure you do. I understand your position. Tell me. I want to know where in this testimony it suggests that your friend on the other side was asserting its patents in an attempt to deprive you of business. Well, here's the circumstantial evidence, if you will. We had a relationship with Triangle that had gone on for several months. It was a lucrative relationship. We were making a lot of money. We were told as a part of that conversation that we were going to be able to continue to do work after December of 2014. Suddenly, 2014, the work stops. And suddenly, no surprise, the same time, it starts with superheaters of North Dakota. That's pretty powerful evidence, it seems to me. The accountant took a look at all the records of their accounting records, our accounting records, saw that ours went up to a certain point, it stopped, and theirs went on. I think our clients were entitled to explain why our business stopped at that point in time as a part of our damage calculation. Are you with me? I understand what you're saying, but you're not answering my question, which is, where is the direct evidence that Heat on the Fly attempted to unfairly assert its patent against you that meets the elements of a tortious interference claim? Well, I think the answer to that question is it's circumstantial evidence, direct evidence. But there's other evidence in the record that there may have been price differentials and the like that could support a reason for moving from them to you. No. Well, yes, there's an email that they referred to, an email not that we wrote. I mean, you can't make out a tortious interference claim by saying, we were getting the business, all of a sudden, now they're getting the business. You have to point to something direct that says that they were threatening other people with their patent if they didn't switch to that. Well, we do have evidence of that, that there were other entities that they threatened. They threatened Marathon, which was our major customer. Where's that evidence? That evidence is, I'll get you the site here momentarily, but it's from Mr. Torgerson. Sorry, Mr. Roger Torgerson is his name. And I'll have to furnish it to you later. Roger Torgerson testified that he had a meeting with Mr. Lyles, and Mr. Lyles told him that if there was people that are heating with the heat-on-the-fly method, and this was in the context of Torgerson was the company man for Marathon who was doing work with us. Was that cited in your brief? Yes, I believe it was. Where? Well, I'm going to have to. Okay. You're not going to give me any good information or arguments, so why don't I stop wasting your time on this? I know you want to save some time for your friend. Yeah. But I don't want the court to miss, and I'm sure you haven't, but out of my nervousness, let me repeat it. I don't want the court to miss the fact that there were two witnesses in this hearsay conversation, supposedly. They've waived any hearsay objection when they call the second witness and ask him, and he gives the precise answers that the first witness gave that they did object to. It seems to me that that's the end of the hearsay inquiry. That testimony is admitted and is before the court. Whether it would have been an objection they could have made at the time or whether they made a mistake by calling the second witness, that's beside the point. The North Dakota attorney's fees statute. Let me just say that under the North Dakota statute there is a requirement that there be an underlying tort. And it's a little bit of an anomaly, but in any case, what is clearly the case is both the tort of interference and the tort of the North Dakota unfair sales and advertising statute. They're sort of joined at the hip, if you will. And this case, as we pointed out in our materials, is directly controlled by the Eighth Circuit's American Family versus Hollander case. And it basically stands for the proposition that unless you can show privilege, unless that you didn't have actual notice of the claim, and to get back to an earlier question, Your Honor, that you asked, actually three months before the trial, we notified them that we were going to make this claim. And then also that you have to show that the evidence was admitted without objection. So here we have energy notifying the appellants of the claim three months before trial. We have both parties briefing the North Dakota statute in their trial briefs. We have evidence relative to the issue being admitted. We have the appellants not objecting to a jury instruction, actually to a jury instruction. I thought they did object to that jury instruction. I'm sorry? They did object to that jury instruction. And they said that they didn't think, Your Honor, I don't think this should be properly an issue in the case. Instead, this just goes to an element of the tortious interference claim. I'm pretty sure that's in the record. I may be wrong, but I don't think so, Your Honor. I believe that discussion took place at the time on which we were arguing about whether or not this claim was involved. When it came to the jury instructions. So it's your position that even if they thought the jury instruction went to the tortious interference, they needed to preserve that argument even though the court very clearly said this might not be an issue in the case. I'm going to punt on that until later, see how the jury works out this issue, and then I'll figure out at the end whether, in fact, this was properly before me. Yes. The jury instruction, the only one that they objected to with respect to instruction number six, which I'm talking about, was that the burden of proof was different or something. We didn't object to that. But the jury is then asked two interrogatory questions about the North Dakota statute. Was there a violation of the statute? And secondly, was it a knowing violation of the statute? And I explained to the court that I wanted that knowing clause in there because it fit under the statute. So the jury goes ahead and deliberates on that issue. They sign the jury verdict, checking off both of those torts, and subsequently the judge enters a judgment on the jury findings. Now, what is the only thing that's possibly missing in this from implied consent? What that we didn't in a complaint somewhere say, and we're specifically referring to the North Dakota statute. That's the only thing that's missing. Why don't you briefly address your cross appeal on attorney's fees under 285? Let me just say this by way of introduction to Mr. Coleman, who's going to take the laboring oar on that. Mr. Coleman's not going to have any time. You've used all of the time you had for both direct and rebuttal. But I'm going to allow you to address this issue. Well, let me just say that I don't think you can read the court's initial order on inequal conduct and then read the second order on exceptionality without sort of wondering, is it the same judge that wrote both opinions? Just yesterday. Well, I can see that it's the same judge that wrote both opinions because in the inequitable conduct, well, let's just say in the attorney's fees opinion, he bewilderingly to me says that they had a meritorious argument on inequitable conduct, and that's why he's going to deny your attorney's fees. Meritorious, if I understand the meaning of that word, because he actually uses it twice, once with regard to marathon, then he says that their arguments were not without merit with regard to you. And so I'm bewildered, but I'm likewise bewildered by his approach, for example, in obviousness, where he says every possible fact underlying the obviousness inquiry is in dispute. So this case is ripe for summary judgment. That's pretty close to a direct quote to what he said. So I can see that it's the same judge that decided. Well, let me tell you why I said that. Yesterday, this court entered an opinion, Honeywell versus Fujifilm, in which you considered exceptionality. And one of the things you decided in there was that the district court had conducted a detailed and structured analysis of exceptionality. The judge had considered the totality of the circumstances. And the second time he said the detailed findings, the detailed versions of why the plaintiff's position on the merits of litigation were not exceptional. You look at that order on exceptionality, and believe me, I don't see any evidence that he has considered the totality of the circumstances. Okay, I think we have your argument. Your time is up, so let's have rebuttal. Mr. Brister, you have some rebuttal time left. The hearing four months after trial was an evidentiary hearing because that was its title. Whether anybody chose to add evidence is a different matter, but it was set and called as an evidentiary hearing. The continuation patents were not different. Can I just move you to the tortious interference issue? Assuming I agree with you that the main hearsay testimony should be excluded, your friend has pointed to, apparently, a different witness that repeated the same thing and said you didn't object to that testimony. Is that correct? I'd have to look at it and see. I mean, you all are not very helpful. We're asking you very specific questions about the record, and neither of you can answer them. I mean, this is not my job to dig through the record independently and come up with reasons to affirm or reverse this appeal. I agree. This is a two-week trial, and this is something I heard the first time five minutes ago. So, if he's going to add that to the record, I just request a change. Well, he's not adding it to the record. The record exists. Correct. I mean, if you had arguments about why this verdict should or shouldn't be upheld, you should have put them in. Well, just reasoning on the fly, once the evidence is admitted, which it was before this witness was called, and we've stated our objections and the question is do we have to state the same objection again, and sometimes you do and sometimes you don't. Well, when you say do we need to state the same objection again, if I understood your opposing counsel's argument, he says the second witness was actually called by you, and on direct, I know it wasn't you personally, just to be clear, and actually asked by you on direct, so would you be objecting to your own calling of the witness and your own questioning of him? How would that work precisely? Well, once evidence comes in, you can question the witness about what they said without waiving the objection. I mean, there's exceptions and stuff to that. I'd need to look at it and see. But wouldn't that have been done and it wasn't done here? I'm sorry? But that did not occur, right? So your client's counsel called the witness who then presented testimony that, had it been called by the other party, I guess you would have objected to, but there was no follow-up and no questioning of the type that you're talking about, right? It's been a long time since my second year evidence class. I'm trying to remember, and I'm sorry, that's all I can say. Well, can I ask you about attorney's fees for a minute? Sure. So I would like to follow up on the questions from Judge Moore, and in particular that sentence that she was referring to in the judge's opinion, where the judge says that he's not going to award attorney's fees. And as justification for that, he says, reasonably disputed with its own evidence and provided a meritorious argument against a finding of inequitable conduct. That doesn't make much sense to me, given that inequitable conduct requires a finding that there's a single reasonable inference as an intent to deceive. And not only here do we have the judge saying, I'm not going to award attorney's fees because the inequitable conduct argument was meritorious, and also saying something, even if meritorious were interpreted as plausible, that doesn't make any sense. It totally undermines the finding of inequitable conduct. I agree, as well as the summary judgment when he says every fact was in dispute. Okay, but we're not talking about the obviousness issue right now. I just want to have you address, please, why it is that this court didn't err in its determination that attorney fees aren't appropriate. And I don't mean to suggest that attorney fees are appropriate in every case where there's inequitable conduct finding. But there's something here where there's a finding of inequitable conduct, and then the district court says no attorney fees are appropriate, but then has this weird sentence that is completely in contrast to the inequitable conduct finding and suggests that maybe the district court erred. Well, unless inequitable conduct is always an exceptional case, that can't be so. Don't I have to look at the district court's reasoning for why attorney fees are inappropriate? Right. And if there's something in here like saying that your client, which lost on inequitable conduct, provided a meritorious argument on inequitable conduct,  I don't think so because it's not the only reason. There's several reasons. Number one, we're two months after the evidentiary hearing, so he knows for a fact what Mr. Hifley was told by his attorney. Number two, a lot of his analysis on exceptional case is we didn't sue them, they sued us. We're not a vexatious litigant. We don't go around suing people and the kind of things that make a case exceptional. Can you hold on for a second just on that one? They brought a DJ action, correct? Correct. There has to be a case or controversy over this patent for them to bring a DJ action, correct? Right. They had to fear a threat that you would sue them, and it has to be legitimate in order to be eligible to even bring a DJ action. I'm not sure they have to be in fear. There has to be a case or controversy, and a patentee who's never enforced a patent against anybody and is standing down on it, there couldn't be a case or controversy. I'm not saying we were standing down on it. I'm saying we didn't sue anybody on it, and we had a valid patent. Had you threatened litigation? No. There's no evidence that we threatened them with litigation. There's no evidence that we threatened Marathon on this. Oh, you threatened Marathon. Marathon didn't cancel any jobs off Torsh's interference. Then why was there DJ jurisdiction? Why didn't you move to dismiss for lack of jurisdiction? Well, because they wanted to do what you have. If I wanted to do something that somebody has a patent on, the safe thing to do would be… Well, that's not good enough, though. I mean, if there's not a case or controversy, and you truly believed you weren't asserting the patent against anybody, you weren't threatening to assert it, then you should have moved to dismiss for lack of jurisdiction. You admit that there's a case or controversy. If somebody claims my homestead, even though I've never heard from them, never met them, I can sue them for declaratory judgment that they don't own my house. I don't have to be in fear or anything like that. It's their claim. And patent is, after all, a claim. Okay. Well, I think we've exhausted all of our time for today. I thank all counsel. The case is submitted. May I provide the site that the judge asked me about? Torgerson deposition is cited on page 55 of our opening brief. It's appendix 21853. The Linn testimony is appendix 22750 to 22757. Our next case for today…